**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| RONALD ALSUP, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )   CIVIL NO. 06-244-GPM |
| | ) |
| 3-DAY BLINDS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

# <u>MEMORANDUM AND ORDER</u>

**MURPHY, Chief District Judge:**

This action is before the Court on the Motion to Remand brought by Plaintiffs Ronald Alsup,

Robert Crews, and Magnum Properties, LLC (Doc. 65). For the following reasons, the motion

is **GRANTED**.

## <u>BACKGROUND</u>

This case, which was filed initially in the Circuit Court of the Third Judicial Circuit,

Madison County, Illinois, is a putative nationwide class action against sixty-two manufacturers

and/or sellers of window blinds.[1] Plaintiffs allege that certain window blinds manufactured and/or

---

1.   Defendants in this case are, in addition to 3-Day Blinds, Inc.: Ace Hardware; Achim Importing Company, Inc.; All Strong Industry (USA), Inc.; All Blinds Co., Ltd.; All-Teck, Div. of Plastic, Ltd.; Ames Department Stores, Inc.; Beautiful Window Enterprise Co., Ltd.; Big Lots Stores, Inc., f/k/a Consolidated Stores Corporation, f/k/a Consolidated Stores International Corporation; Blinds To Go, Inc.; The C-Mor Company, L.P.; Ching Feng Blinds Ind. Co., Ltd.; Ching Feng Home Fashions Co., Ltd.; Coastal International, Inc.; Comfortex Corporation; Custom Craft Vinyl Products, Inc.; Dolgencorp, Inc.; Fingerhut Companies, Inc.; Foot Locker Specialty, Inc., f/k/a F.W. Woolworth Co.; Home Depot U.S.A., Inc.; Hunter Douglas Window Coverings, Inc.; Ikea U.S., Inc.; J. Paxton Enterprises, Inc.; J.C. Penney Corporation, Inc.; The Jencraft Corporation; Julius Koch U.S.A., Inc.; K Mart Corporation; Kenny Corporation; Kirsch Enterprises, Inc.; Kuehne & Nagel, Inc.; Lewis Hyman, Inc.; Limattan Corporation; Long Far Ind. Co., Ltd.; Lotus & Windoware, Inc.; Lowe's Home Centers, Inc.; Main Fine USA; Marietta Drapery & Window Coverings Co., Inc.; The May

sold by Defendants are dangerous because they are equipped with cords in excess of 7 ¼ inches in length, thus posing a risk of strangulation to children and infants. Plaintiffs allege that Defendants sold the window blinds at issue with the knowledge that they are dangerous, and that Defendants, in cooperation with federal authorities, including the United States Consumer Product Safety Commission ("CPSC"), developed a repair for the blinds that Defendants knew would be ineffective, but which they falsely represented to consumers as making the blinds safe. Plaintiffs' complaint asserts claims for negligence (Count I), violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 - 505/12 (Count II), breach of implied warranty (Count III), breach of express warranty (Count IV), civil conspiracy (Count V), breach of implied warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 - 2312 (Count VI), and for declaratory and injunctive relief (Count VII).

Shortly after this action was filed in state court on February 17, 2005, it was timely removed to this Court on April 20, 2005, by Defendant Mitchell Blind and Shade Company ("Mitchell"). Federal subject matter jurisdiction was asserted on the basis of 28 U.S.C. § 1334 and 28 U.S.C. § 1452, as well as on the basis of 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.), and 28 U.S.C. § 1441. Thereafter, the Court remanded the case to state court for lack of subject matter jurisdiction.

---

Department Stores Company, d/b/a Venture Stores, Inc.; Menard, Inc.; Mitchell Blind and Shade Company; Montgomery Ward Enterprises, Inc.; Newell Operating Company; Nien Made Enterprise Co., Ltd.; Pacific Resources Export, Ltd.; Pier 1 Imports (U.S.), Inc.; Richfield Window Coverings; Royal Window Coverings (USA), L.P.; Sears Brands, L.L.C.; Shopko; Springs Window Fashions, L.P.; Standard Brands Paint Company, Inc.; Super Dollar Discount, Inc.; Super Dollar, Inc.; Superior Shade and Blind Co., Inc.; Richview, Inc.; OEM Shades, f/k/a Verosol USA, Inc.; Vertilux, Ltd.; Vista Products, Inc.; Wal-Mart; Whole Space Plastic Mfg. Co., Ltd.; Window Concepts, Inc.; and Wrisco Industries.

*See Alsup v. 3-Day Blinds*, No. Civ. 05-287-GPM, 2005 WL 2094745 (S.D. Ill. Aug. 25, 2005). On this second removal of the case to this Court, Defendant Lowe's Home Centers, Inc. ("Lowe's"), which was served with Plaintiffs' complaint on February 24, 2006, and which removed the case to this Court on March 24, 2006, asserts that federal subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1442, governing removal of cases from state court to federal court by federal officers or persons acting under the direction of such officers. Plaintiffs have moved for remand of the case to state court for lack of subject matter jurisdiction.

**D**ISCUSSION

### A. Legal Standard

A defendant seeking removal bears the burden of establishing federal subject matter jurisdiction. *See Disher v. Citigroup Global Mkts. Inc.*, 419 F.3d 649, 654 (7th Cir. 2005). Federal removal jurisdiction is statutory in nature and is to be strictly construed. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). Removal is proper if it is based on permissible statutory grounds and if it is timely. *See Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004). Doubts concerning removal must be resolved in favor of remand to the state court. *See McCoy v. General Motors Corp.*, 226 F. Supp. 2d 939, 943 (N.D. Ill. 2002).

### B. Timeliness of Removal

Plaintiffs challenge the timeliness of Lowe's removal of this case in light of the earlier, unsuccessful attempt by Mitchell to remove the case to this Court. Specifically, Plaintiffs assert that any allegations of federal jurisdiction under 28 U.S.C. § 1442 should have been raised on the earlier removal, and that the Court is foreclosed from considering the propriety of removal under

section 1442.  The Court disagrees.

While it is true that the Court's previous Order remanding this case to state court established the law of the case as to the existence of subject matter jurisdiction in this case under 28 U.S.C. § 1334 and 28 U.S.C. § 1332, *see Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 457 (7th Cir. 2005), on the prior removal of this case the Court was not asked to make, and did not make, any findings with respect to whether removal of this case might be proper under 28 U.S.C. § 1442.  *See Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979) ("The doctrine of law of the case comes into play only with respect to issues previously determined."); *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1032 (7th Cir. 1997) ("Law of the case . . . applies only to issues that were decided . . . but not to questions which might have been decided but were not.").  Thus, the Court's prior Order remanding this case does not pose any obstacle to consideration on the second removal of the case of the existence of federal subject matter jurisdiction under section 1442.

Further, the removal statutes permit successive removals of an action, provided an adequate factual basis exists for a later removal.  In *Benson v. SI Handling Systems, Inc.*, 188 F.3d 780 (7th Cir. 1999), the court stated, "Nothing in [28 U.S.C.] § 1446 forecloses multiple petitions for removal."  *Id*. at 782.  "[I]f subsequent pleadings or conduct by the parties or various other circumstances brings a case that was not previously removable within the removal jurisdiction of the federal courts, a second notice of removal is permissible."  14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, *Federal Practice & Procedure* § 3739 (3d ed. 1998 & Supp. 2005) (collecting cases).  *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 493 (5th Cir. 1996) ("[A] remand order that expressly addresses the theory of federal jurisdiction does not have [preclusive] effect on subsequent removals based on the same theory, provided that

the subsequent removal petitions allege a different factual basis for seeking removal."); *O'Bryan v. Chandler*, 496 F.2d 403, 408-12 (10th Cir. 1974) (permitting a second removal pursuant to 28 U.S.C. § 1442 where facts disclosed after the prior remand of the action established the existence of federal subject matter jurisdiction under the statute); *Nicholson v. National Accounts, Inc.*, 106 F. Supp. 2d 1269, 1271 (S.D. Ala. 2000) (the mere fact that case was previously remanded does not, by itself, automatically preclude a defendant from filing a second notice of removal; the defendant may remove a previously remanded case if subsequent pleadings or events reveal a new and different basis for removal); *One Sylvan Road N. Assocs. v. Lark Int'l, Ltd.*, 889 F. Supp. 60, 62-64 (D. Conn. 1995) (allowing a second removal of a case in diversity jurisdiction, but finding that the evidence developed in state court after the initial remand failed to show that the jurisdictional amount in controversy was satisfied).

Finally, Plaintiffs' argument ignores the settled rule that removal under 28 U.S.C. § 1442 can be effected by any defendant in an action, with or without the consent of co-defendants. *See, e.g., Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998); *Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981); *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150, 152 (5th Cir. 1965); *County of Wayne v. Bank of Bloomfield Hills*, No. 02 72766, 2002 WL 31777581, at *1 n.2 (E.D. Mich. Oct. 18, 2002); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994); *Bottos v. Avakian*, 477 F. Supp. 610, 611 n.3 (N.D. Ind. 1979). *See also Seth Peterson Cottage Conservancy, Inc. v. Goodyear Tire & Rubber Co.*, No. 03-C-393-C, 2003 WL 23221149, at *4 (W.D. Wis. Oct. 27, 2003). Thus, a defendant entitled to claim federal jurisdiction under section 1442 can do so within thirty days of service of a complaint, even if co-defendants failed to assert such jurisdiction in a timely manner. *See*

*Plourde v. Ferguson*, 519 F. Supp. 14, 16 (D. Md. 1980) (removal pursuant to section 1442 was timely where a defendant properly removed the case within thirty days of receipt of the initial pleading in the case, notwithstanding the fact that an earlier-served defendant failed to effect timely removal; section 1442 does not require unanimity of parties to effect removal).  In this case the record shows that Lowe's removed the case pursuant to section 1442 within thirty days from the date it was served with Plaintiffs' complaint.  Therefore, the removal of this action is timely.

### C.    Federal Officer Removal

Under 28 U.S.C. § 1442, a defendant can remove "[a] civil action . . . commenced in a State court against . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office[.]" 28 U.S.C. § 1442(a)(1).  The basic purpose of section 1442 is to ensure a federal forum for defenses of official immunity by federal officers. *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court."); *Wisconsin v. Schaffer*, 565 F.2d 961, 964 (7th Cir. 1977) ("The purpose of the removal statute is to insure a federal forum for cases where federal officials must raise defenses arising out of their official duties.").

As one court noted, federal officer removal is rooted in "an anachronistic mistrust of state courts' ability to protect and enforce federal interests and immunities from suit." *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1150 (D. Colo. 2002) (emphasis omitted).  In *Arizona v. Manypenny*, 451 U.S. 232 (1981), the Court said,

> The Federal Government . . . can act only through its officers and agents, and they must act within the States.  If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a State court, for an alleged offense against the law of the State, yet warranted by the Federal authority

they possess, and if the general government is powerless to interfere at once for their protection, – if their protection must be left to the action of the State court, – the operations of the general government may at any time be arrested at the will of one of its members.

*Id.* at 241 n.16 (quoting *Tennessee v. Davis*, 100 U.S. 257, 263 (1880)). *See also Maryland v. Soper*, 270 U.S. 9, 32 (1926) ("The constitutional validity of the section rests on the right and power of the United States to secure the efficient execution of its laws and to prevent interference therewith, due to possible local prejudice, by state prosecutions instituted against federal officers in enforcing such laws, by removal of the prosecutions to a federal court to avoid the effect of such prejudice.").

Removal under 28 U.S.C. § 1442 represents an exception to the general rule that removal of an action based on an issue of federal law is governed by the claims asserted in a plaintiff's well-pleaded complaint. *See* 14C Wright, Miller, Cooper & Steinman, *Federal Practice & Procedure* § 3727. This is because federal officer removal "operates on the basis of issues generally thought to be defensive in character rather than on the content of the plaintiff's claim." *Id.* A defendant who is able to meet the requirements for removal under section 1442 "gain[s] access to federal court [even] where no federal question is presented by the plaintiff." *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 939 (E.D.N.Y. 1992).[2] Also, section 1442(a)(1)

---

2.   It should be noted that Lowe's does not assert federal jurisdiction in this case on the basis of Count VI of Plaintiffs' complaint, which, as discussed, is brought pursuant to the Magnuson-Moss Warranty Act. *See* 15 U.S.C. § 2310(d)(1)(B); 28 U.S.C. § 1331; *Grubbs v. Pioneer Hous., Inc.*, 75 F. Supp. 2d 1323, 1326 (M.D. Ala. 1999); *Marchionna v. Ford Motor Co.*, No. 94 C 275, 1995 WL 476591, at **5-6 (N.D. Ill. Aug. 10, 1995). Presumably the reason Lowe's does not assert federal jurisdiction pursuant to the Magnuson-Moss Warranty Act is that a federal court may not entertain an action under the statute "if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(C). Thus, as a prerequisite to federal subject matter jurisdiction over a putative class action brought under the statute, a complaint must identify at least one hundred named class representatives. *See In re General Motors Corp.*

authorizes removal of an entire case, even though only one of its controversies might involve a federal officer or agency. *See State of N.J. Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Servs., Inc.*, 719 F. Supp. 325, 334 (D.N.J. 1989); 14C Wright, Miller, Cooper & Steinman, *Federal Practice & Procedure* § 3727.

Under the statute governing federal officer removal, not only a federal officer but "any person acting under that officer" can remove an action from state court to federal court. 28 U.S.C. § 1442(a)(1). To effect removal as a person acting under a federal officer, Lowe's must prove three elements: (1) it is a "person" within the meaning of the statute; (2) it acted under the direction of a federal officer, meaning that there is a nexus or causal connection between Plaintiffs' claims and the acts Lowe's performed under the direction of a federal officer; and (3) it has a colorable federal defense to state-law liability. *See Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999); *Mesa v. California*, 489 U.S. 121, 129 (1989); *Manypenny*, 451 U.S. at 242; *Willingham*, 395 U.S.

---

*Engine Interchange Litig.*, 594 F.2d 1106, 1114 n.2 (7th Cir. 1979); *In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*, No. CIVMDL-03-1562GPM, Civ. 05-10007-GPM, 2006 WL 644793, at *2 (S.D. Ill. Mar. 9, 2006); *O'Keefe v. Mercedes-Benz USA, LLC*, No. 01CV2902, 2002 WL 377122, at **4-5 (E.D. Pa. Jan. 31, 2002); *Barr v. General Motors Corp.*, 80 F.R.D. 136, 138-39 (S.D. Ohio 1978). Plaintiffs' complaint names only three class representatives. The Court notes further that, even were Plaintiffs' complaint facially compliant with the jurisdictional requirements for class actions under the Magnuson-Moss Warranty Act, the sole basis for federal subject matter jurisdiction alleged in the notice of removal in this case is 28 U.S.C. § 1442, foreclosing any consideration by the Court of the existence of federal subject matter jurisdiction on the basis of the Magnuson-Moss statute. A notice of removal may be amended more than thirty days after the time to remove has expired "only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice . . . . Completely new grounds for removal jurisdiction may not be added and missing allegations may not be furnished, however." 14C Wright, Miller, Cooper & Steinman, *Federal Practice & Procedure* § 3733. *See also Iceland Seafood Corp. v. National Consumer Coop. Bank*, 285 F. Supp. 2d 719, 726-27 (E.D. Va. 2003); *Tincher v. Insurance Co. of Pa.*, 268 F. Supp. 2d 666, 667-68 (E.D. Va. 2003); *In re Petition to Detach Prop.*, 878 F. Supp. 111, 112-13 & n.1 (N.D. Ill. 1995); *Castle v. Laurel Creek Co.*, 848 F. Supp. 62, 66-67 (S.D.W.Va. 1994).

at 409; *Venezia v. Robinson*, 16 F.3d 209, 211-12 (7th Cir. 1994); *Paldrmic v. Altria Corp. Servs., Inc.*, 327 F. Supp. 2d 959, 963 (E.D. Wis. 2004).  *Cf. Jewel v. UnumProvident Corp.*, 352 F. Supp. 2d 122, 127 (D. Mass. 2005); *Reiser v. Fitzmaurice*, No. 94 Civ. 7512, 1996 WL 54326, at *2 (S.D.N.Y.  Feb. 8, 1996).  Lowe's, as the proponent of removal, has the burden of proving all of the requisite elements for federal officer jurisdiction, and a failure to prove any one of the elements requires remand.  *See In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.*, 327 F. Supp. 2d 554, 562 (D. Md. 2004).  At issue here are the second and third elements of the test for federal officer removal, namely, whether there is a causal nexus between Plaintiffs' claims and acts performed by Lowe's under the direction of a federal officer and whether Lowe's has a colorable federal defense to Plaintiffs' claims.[3]

### 1.    Acting under the Direction of a Federal Officer

In general, a private person does not establish federal officer jurisdiction merely by showing participation in a regulated industry.  *See City of Livingston v. Dow Chem. Co.*, No. C05-03262-JSW, 2005 WL 2463916, at *3 (N.D. Cal. Oct. 5, 2005); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 342 F. Supp. 2d 147, 156 (S.D.N.Y. 2004); *Virden v. Altria Group, Inc.*,

---

3.    Although some courts have held that a corporation is not a "person" within the meaning of 28 U.S.C. § 1442, *see, e.g., Arnold v. Blue Cross & Blue Shield of Tex., Inc.*, 973 F. Supp. 726, 739 (S.D. Tex. 1997), the Court agrees with the weight of authority holding that corporations are persons for purposes of federal officer removal.  *See, e.g., Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 486-87 (1st Cir. 1989); *Davidson v. Arch Chems. Specialty Prods., Inc.*, 347 F. Supp. 2d 938, 941 (D. Or. 2004); *Jones v. Three Rivers Elec. Coop.*, 166 F.R.D. 413, 414 (E.D. Mo. 1996); *Good v. Armstrong World Indus., Inc.*, 914 F. Supp. 1125, 1127-28 (E.D. Pa. 1996); *Ryan*, 781 F. Supp. at 946; Kristine Cordier Karnezis, Annotation, *Who Is "Person Acting Under" Officer of United States or Any Agency Thereof for Purposes of Availability of Right to Remove State Action to Federal Court Under 28 U.S.C.A. § 1442(a)(1)*, 166 A.L.R. Fed. 297 (2005) (collecting cases).  Thus, the Court concludes that the first prerequisite for federal officer removal is met in this case.

304 F. Supp. 2d 832, 844-45 (N.D.W.Va. 2004); *Tremblay v. Philip Morris, Inc.*, 231 F. Supp. 2d 411, 418-19 (D.N.H. 2002); *Guillory v. Ree's Contract Serv., Inc.*, 872 F. Supp. 344, 347-48 (S.D. Miss. 1994). In *Venezia v. Robinson* the United States Court of Appeals for the Seventh Circuit addressed the standard required to show acts taken at the direction of a federal officer such as to create removal jurisdiction. The *Venezia* case arose out of a sting operation by the Federal Bureau of Investigation against an operator of illegal video poker machines, Thomas Venezia. *See* 16 F.3d at 210-11. An agent of the Illinois Liquor Control Commission who was participating in the sting, Bonds Robinson, Jr., solicited a bribe from Venezia, whereupon Venezia sued Robinson in state court. *See id*. Robinson removed the case to federal court, contending that he was acting under the direction of the FBI when he asked for the bribe. *See id*.

The Seventh Circuit affirmed the removal. In doing so, the court noted the potential limitations of a defense of official immunity under the facts of the case. "No matter what the FBI told him to do, Robinson could not blow up Venezia's warehouse or kidnap his daughter just to find Venezia's breaking point. Even the President of the United States may not excuse his subordinates from the demands of the criminal law." *Venezia*, 16 F.3d at 211. "To win the confidence of hoodlums, federal agents sometimes must speak and act like hoodlums . . . . How far this principle extends is an unsettled issue. Could the FBI have sent a team of goons to smash some video poker machines and threaten future thuggery unless Venezia paid bribes, defending its acts with the theory that if Venezia turned out to be an honest entrepreneur he could recover for his loss by bringing a suit under the Tucker Act?" *Id*. at 211-12. The court concluded that "[t]hese are complex issues, but the propriety of removal does not depend on the answers." *Id*. at 212. As *Venezia* shows, to establish federal officer jurisdiction, a removing defendant must show that it effectively stands in

the shoes of a federal employee and, as such, was required by the government to take actions that subjected it to liability under state law.  This standard sometimes is termed "regulation plus."

In *Bakalis v. Crossland Savings Bank*, 781 F. Supp. 140 (E.D.N.Y. 1991), the court explained that, under the "regulation plus" standard, a corporation attempting to avail itself of federal officer removal jurisdiction must show that, through its conduct giving rise to liability, it was so "intimately involved with government functions as to occupy essentially the position of an employee." *Id*. at 145.  *See also Virden*, 304 F. Supp. 2d at 846 ("If the [private] actor is effectively an agent or employee of the government because its activities are controlled and funded by the government, it is entitled to the same jurisdictional protection as the government itself."); *Kaplansky v. Associated YM-YWHA's of Greater N.Y., Inc.*, No. 88 CV 1292, 1989 WL 29938, at *3 (E.D.N.Y. Mar. 27, 1989) (parties complying with a subpoena were not "acting under" a federal officer because the defendants were not "asked to stand in the shoes of [federal] officers or agents and perform 'official' functions").  Put another way, a removing defendant must show that "at all times" it was "acting under express orders, control and directions of federal officers," and that its "involvement [in conduct giving rise to state-court liability] was 'strictly and solely at federal behest.'"  *Ryan*, 781 F. Supp. at 947 (quoting *Camacho*, 868 F.2d at 486).  *See also Akin v. Big Three Indus., Inc.*, 851 F. Supp. 819, 823-24 (E.D. Tex. 1994) (finding federal officer jurisdiction proper "when a government contractor builds a product pursuant to [United States] Air Force specifications and is later sued because compliance with those specifications allegedly causes personal injuries[.]"); *Pack v. AC & S, Inc.*, 838 F. Supp. 1099, 1103 (D. Md. 1993) (federal officer jurisdiction is established by showing that a removing defendant is subject to the "direct and detailed control" of a federal officer, meaning that the defendant must "show[ ] strong government

intervention and the possibility that a defendant will be sued in state court as a result of the federal control"; direct control was proven where the government contracted with the removing defendant to build turbine generators under government specifications requiring use of asbestos cloth).

The rather sparse factual record developed by the parties regarding the involvement of the CPSC with the window blinds industry, a record the Court has construed in the light most favorable to remand while resolving all deficiencies in the record against Lowe's as the proponent of removal, *see Freiberg*, 245 F. Supp. 2d at 1156, discloses the following facts. In 1994 and 1999 the window blinds industry, in cooperation with the CPSC, undertook voluntary recalls of certain corded window blinds products. *See* Doc. 3 at 4-8, 10-20, 31-33. The recall programs involved discontinuing some product lines and furnishing consumers with free retrofit kits to repair hazardous corded blinds already in use by the public, as well as public education about the strangulation hazard posed by certain types of corded window blinds and the development of voluntary safety standards for corded blinds. *See* Doc. 3 at 15-20, 22; Doc. 4 at 4-5; Doc. 66, Ex. 5. For example, members of the public who owned blinds with long cords capable of forming dangerous loops in which children and infants could become entangled were encouraged to cut the cords, then attach tassels to the ends of the cords; to this end, manufacturers and distributors made tassels available to consumers at no cost. *See* Doc. 66, Ex. 5; Doc. 3 at 10. The recall programs were administered by the Window Covering Safety Council ("WCSC"), an association of manufacturers and sellers of window blinds, and were financed through assessments on manufacturers and sellers of such blinds based on the number of units of blinds shipped by each such manufacturer and seller; for example, Lowe's was assessed $25,370 as its share of the cost of the 1994 recall campaign. *See* Doc. 3 at 22-26, 13.

The WCSC-administered recall programs were designed by the window blinds industry, with

some consultation and approval by the CPSC.  *See, e.g.,* Doc. 3 at 5 (minutes of a 1994 meeting of

the Window Covering Manufacturers Association stating, "CPSC is looking to us to come back to

them with an industry recommendation."); *Id*. at 31 (letter dated May 25, 2000, from the CPSC to

Peter Rush, Executive Director of the WCSC, stating, "We appreciate that your members quickly

developed a 'fix' which we approved on April 11, 2000.").  Participation in the WCSC-administered

recall campaigns was voluntary, and Lowe's elected not to participate, apparently on the grounds

that the recall programs were not cost-effective.  *See* Doc. 66, Ex. 4 at 1; *Id*., Ex. 4(d) at 5, 9;

*Id*., Ex. 6, Ex. 7.  Instead of participating in the WCSC-administered recall campaigns, Lowe's

designed its own recall campaign, which was approved by the CPSC.  *See* Doc. 88, Ex. A.

    The Court concludes that Lowe's has not met its burden to show that it acted under the

direction of a federal officer.  To establish the existence of federal officer jurisdiction, a removing

defendant must "by direct averment exclude the possibility that [a state-court action against the

defendant] was based on acts or conduct of his not justified by his federal duty."  *Mesa*, 489 U.S.

at 132.  Put another way, "[w]hat [removing defendants] must establish for purpose of . . .

§ 1442(a)(1) is that the government authority under which they worked required them to act as they

did," that is, "they must establish the [government's] direction and control of their activities directly

interfered with their ability to fulfill their state law obligation[.]"  *Freiberg*, 245 F. Supp. 2d at

1155.  *See also Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 663 (E.D. Tex. 1999)

(holding that claims for alleged failure to warn arising from exposure to asbestos could not be

removed in federal officer jurisdiction "[b]ecause the federal government provided no direction or

control on warnings when using asbestos [and] did not prevent Defendants from taking their own

safety precautions heeding state-law standards."); *Gauthe v. Asbestos Corp.*, No. Civ. A. 96-2454,

1997 WL 3255, at *3 (E.D. La. Jan. 2, 1997) (finding federal officer removal improper because "[t]here is no evidence that the Government restricted or prohibited [defendant's] ability to notify individuals of the presence of asbestos in the work environment."). Correspondingly, "[c]ourts generally have not found jurisdiction where the government officer did not directly require a purported agent to take specific actions." *McGillick v. World Trade Ctr. Props., LLC*, No. 04 Civ. 3747(AKH), 2004 WL 2049260, at *3 (S.D.N.Y. Sept. 13, 2004).

Federal officer removal is not supported by the bare fact of government approval of a defendant's action. *See Parks v. Guidant Corp.*, 402 F. Supp. 2d 964, 968 (N.D. Ind. 2005) (approval of Class III medical devices by the Food and Drug Administration ("FDA"), although the product of the FDA's "comprehensive regulatory authority over the production of medical devices" and "rigorous" regulation, held not to permit removal in federal officer jurisdiction); *Northern Colo. Water Conservancy Dist. v. Board of County Comm'rs*, 482 F. Supp. 1115, 1117-19 (D. Colo. 1980) (where a federal agency exercised only the power to approve or disapprove pollution control plans developed by local governmental entities facing suits concerning the content of such plans, the entities were not "acting under" federal officers). Similarly, it is not authorized by the fact that the government may have furnished general guidance to a defendant. *See Russell v. Baxter Healthcare Corp.*, No. CIV.A.01-2296, 2002 WL 975679, at *8 (E.D. La. May 10, 2002) ("While the FDA licensed and regulated many of defendants' activities with respect to the production, manufacturing, [and] distribution [of blood-clotting agents] . . . , the federal involvement was not so invasive" so as to warrant federal officer removal); *Ryan*, 781 F. Supp. at 947 ("[A] person or corporation establishing only that the relevant acts occurred under the general auspices of a federal office or officer is not entitled to section 1442(a)(1) removal.").

What a defendant seeking removal under 28 U.S.C. § 1442 must show is that the government compelled it to take an action for which the defendant is sought to be held liable in state court.  In other words, the defendant must prove, "The government made me do it."  *See In re MTBE Prods. Liab. Litig.*, 342 F. Supp. 2d at 156 (holding that defendants had "sufficiently alleged that they added MTBE to gasoline at the direction of the [Environmental Protection Agency], a federal agency, thereby meeting the ["acting under"] requirement of removal pursuant to section 1442(a)(1)."); *In re "Agent Orange" Prod. Liab. Litig.*, 304 F. Supp. 2d 442, 449-50 (E.D.N.Y. 2004) (companies that manufactured the herbicide Agent Orange for the United States were entitled to remove a products liability action brought in state court by a veteran who allegedly was injured due to Agent Orange exposure in Vietnam, where the companies were acting under a federal officer's directions because the government ordered specifications that differed from the companies' commercial applications and the method of warning and application was completely in the government's hands).  *Cf. Arness v. Boeing N. Am., Inc.*, 997 F. Supp. 1268, 1273-75 (C.D. Cal. 1998) (in an action against government contractors based on the contractors' disposal of a toxic substance used to flush rocket engine hardware, holding that removal in federal officer jurisdiction was improper; government specifications required the defendants to clean the engines with a toxic substance, but did not specify how the defendants were to dispose of the cleanser, so that a federal officer did not direct or control the disposal of the toxin, and, thus, there was no connection between the plaintiffs' claims and the defendants' actions at the direction of a federal officer).

In this instance, the record shows that the recall programs for corded window blinds were designed and implemented by the window blinds industry.  Such safety standards as were developed regarding corded window blinds were voluntary and created by the industry; indeed, the Court's

research has failed to disclose any regulatory pronouncement on corded window blinds by the CPSC.  Participation in the recall programs was voluntary, and Lowe's elected not to participate, instead designing its own recall program.  In fact, the record discloses some evidence that the decision by Lowe's not to participate in the WCSC-administered recall campaigns undermined the CPSC's purpose in seeking a voluntary, industry-wide solution to the hazard posed by certain corded window blinds.  For example, a 1994 memorandum to the CPSC by Peter Rush, director of the WCSC, states:

> If the domestic industry had to supply only their customers with tassels to cover only their products we could do it relatively quickly.  But, to do the program correctly, the supply of tassels should be universal, which means a minimum of 500 units at each of 10,000 stores (5 million units) that sell window coverings nationwide.
>
> * * * *
>
> I am concerned that CPSC has not made it clear to the importers (some who are also retailers) what the *requirements* of the corrective action are and what they MUST do.  If the only requirement is that manufacturers and importers send tassels to their customers with some explanatory posters, then the program can be handled individually by each company with no industry wide program necessary.  However, a public information program handled by 50 separate entities will be ineffective and will not solve the problem.

Doc. 3 at 12 (emphasis in original).

The Court finds it impossible to conclude that Lowe's in effect stood in the shoes of a federal employee and was compelled to take actions that exposed it to liability.  This case is a very far cry from the types of instances in which courts have permitted private corporations to remove cases to federal court in federal officer jurisdiction.  *See, e.g., Blackman v. Asbestos Defendants (BHC)*, No. C-97-3066, 1997 WL 703773, at *2 (N.D. Cal. Nov. 3, 1997) (a corporation that contracted to manufacture solid rocket motors for the United States Air Force was entitled to remove in federal officer jurisdiction an asbestos-related personal injury case, since the Air Force

directly controlled the design and development of the motors and required the use of asbestos materials in the manufacture of the motors); *Winters v. Diamond Shamrock Chem. Co.*, 901 F. Supp. 1195, 1199 (E.D. Tex. 1995) (holding that removal in federal officer jurisdiction by former manufacturers of Agent Orange was proper where "the Defense Department expressly directed chemical companies to provide a detailed mixture of chemicals known as Agent Orange" and "the defendants were compelled under threat of criminal sanctions to deliver Agent Orange to the Defense Department."); *Gulati v. Zuckerman*, 723 F. Supp. 353, 358 (E.D. Pa. 1989) (a defense contractor and its employees sued in state court for defaming the corporation's former president in various documents, including reports required by Department of Defense ("DoD") regulations and issued in response to the specific inquiries of DoD officials, was properly removed because the defamation action was "based upon actions taken pursuant to federal direction"). *Cf. Overly v. Raybestos-Manhattan*, No. C-96-2853 SI, 1996 WL 532150, at *4 (N.D. Cal. Sept. 9, 1996) (failure-to-warn claims arising from alleged exposure to asbestos did not give rise to federal officer jurisdiction because the defendant's "only showing . . . relates to the government's manufacturing and engineering specifications"); *Anderson v. Avondale Indus., Inc.*, Civ. A. No. 94-3021, 1994 WL 679827, at **3-4 (E.D. La. Dec. 5, 1994) (removal was not proper where the defendant failed to prove that the federal government was involved in the design of an allegedly defective product). At most, Lowe's has shown that its business is subject to some regulation by the CPSC.

Although Lowe's places heavy reliance upon *Watson v. Philip Morris Cos.*, 420 F.3d 852 (8th Cir. 2005), this reliance is misplaced. The Court has given respectful consideration to the *Watson* decision, *see Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987), but finds *Watson* unpersuasive. In *Watson* smokers of so-called "light" cigarettes, which were advertised by

manufacturers of tobacco products as containing less tar and nicotine than regular cigarettes, brought suit against a cigarette manufacturer, alleging that the manufacturer deliberately misrepresented the levels of tar and nicotine delivered by the manufacturer's "light" cigarettes.  *See* 420 F.3d at 854. Historically, levels of tar and nicotine in cigarettes have been subject to extensive regulation by the Federal Trade Commission ("FTC").  Specifically, the FTC created a method for testing tar and nicotine in cigarettes, the Cambridge Filter Method, which utilizes a smoking machine that takes a thirty-five milliliter puff of two seconds' duration on a cigarette every sixty seconds until the cigarette is smoked to a specified butt length.  *See id*. at 855.  The tar and nicotine collected by the machine is then weighed and measured.  *See id*.

The *Watson* plaintiffs alleged that the defendant manufacturer designed its "light" cigarettes so that they would register as "low tar," that is, as delivering fifteen milligrams or less of tar under the Cambridge Filter Method, while in fact delivering higher levels of nicotine and tar to smokers. *See* 420 F.3d at 854, 861.  The Eighth Circuit held that, in light of the FTC's extensive regulation of nicotine and tar content in cigarettes, the defendant cigarette manufacturer was entitled to remove in federal officer jurisdiction.  *See id*. at 860-61.  With all respect to the *Watson* court, this Court cannot agree.  The *Watson* plaintiffs clearly alleged that the defendant cigarette manufacturer had engaged in conduct designed to mislead both the FTC and consumers of the manufacturer's "light" cigarettes.  The actions alleged by the *Watson* plaintiffs obviously were not taken at the behest of the FTC and in fact were intended to defeat the purpose of the Cambridge Filter Method, namely, to create "a uniform rating system so that consumers could compare tar and nicotine levels among brands."  *Id*. at 855.  *See also* Cigarette Testing; Request for Public Comment, 62 Fed. Reg. 48158, 48158 (Feb. 12, 1997) (explaining that the Cambridge Filter Method was adopted with the

"goal . . . that lower tar and nicotine cigarettes should be less harmful than higher tar and nicotine brands."). In fact, the *Watson* court acknowledged that the result it reached was contrary to the weight of authority in similar cases involving removal in federal officer jurisdiction by manufacturers of tobacco products. *See* 420 F.3d at 857 (citing *Virden*, 304 F. Supp. 2d 832, *Paldrmic*, 327 F. Supp. 2d 959, and *Tremblay*, 231 F. Supp. 2d 411). *See also Arnold v. Philip Morris USA, Inc.*, No. 03-CV-0403-MJR (S.D. Ill. Mar. 2, 2004) (order of remand). *But cf. Kelly v. Martin & Bailey, Inc.*, No. 05-CV-0409-DRH, 2006 WL 44183, at **3-5 (S.D. Ill. Jan. 9, 2006).

However, assuming for the sake of argument that *Watson* was correctly decided, the Court finds *Watson* readily distinguishable on its facts from this case. In *Watson* the Eighth Circuit emphasized that its decision was based on the extraordinary level of the FTC's involvement in testing nicotine and tar in cigarettes. For two decades the FTC operated a testing facility for evaluating the nicotine and tar content of cigarettes under the Cambridge Filter Method. *See* 420 F.3d at 855. When the FTC finally closed the facility, it was on the condition that cigarette manufacturers continue to test the nicotine and tar content of their products using the Cambridge Filter Method. *See id*. Further, the FTC required cigarette manufacturers to disclose the nicotine and tar content of their products based solely on the Cambridge Filter Method, and threatened prosecution for deceptive advertising against cigarette manufacturers who refused to do so. *See id*. at 860. In at least one instance, the FTC threatened prosecution against a manufacturer that wished to disclose in its advertising a higher nicotine and tar level than registered under the Cambridge Filter Method. *See id*.

In light of the FTC's extraordinarily close regulation of the tobacco industry, the Eighth

Circuit found that the requirements for federal officer jurisdiction were satisfied:

> The FTC involved itself in the tobacco industry to an unprecedented extent. Throughout the record, there were several indications that both developing a testing method and carrying out the testing evidenced an unusually high level of governmental participation and control. Deputy Director of the Bureau of Consumer Protection of the FTC, C. Lee Peeler, could not recall any other instance where the FTC had gone so far as to specify the testing methodology. To actually conduct the testing itself for over twenty years, instead of delegating that task to the industry, was outside the government's normal course of conduct. The operation of a cigarette lab by the FTC was "really something that was unique" and "unusual for . . . the Commission."

*Watson*, 420 F.3d at 860-61. The point that the *Watson* decision is narrow and based on the unusual facts of the case was made clear in Judge Gruender's concurring opinion in the case. Judge Gruender stated, "[O]ur decision today should not be construed as an invitation to every participant in a heavily regulated industry to claim that it . . . acts at the direction of a federal officer merely because it tests or markets its products in accord with federal regulations." *Id.* at 863. "[I]n most instances, a contract, principal-agent relationship, or near-employee relationship with the government will be necessary to show the degree of direction by a federal officer necessary to invoke removal under 28 U.S.C. § 1442(a)(1)." *Id.* Judge Gruender's concurrence went on to say,

> In this case, as the court's opinion makes clear, the FTC's direction and control of the testing and marketing practices at issue is extraordinary. The FTC developed the Cambridge Filter Method, conducted the testing itself for twenty years before farming it out to the cigarette companies, threatened a deceptive advertising action if the method of testing deviated in the smallest way from the government-mandated method and controlled the disclosure of the results throughout. Because the FTC passed the function of performing the testing to the cigarette companies while allowing them no independent control of the process whatsoever, this is a rare case in which federal officer jurisdiction is appropriate even in the absence of a contract, principal-agent relationship, or near-employee relationship with the government.

*Id.* at 863-64. In this case, of course, one finds nothing analogous to the level of governmental involvement in the testing of tobacco products. As discussed, the recall campaigns for corded

Page 20 of  24

window blinds were developed by the industry.  There was no ongoing, mandatory governmental testing of the industry-designed retrofit.  Further, participation in the WCSC-administered recall campaigns was voluntary, and in fact Lowe's elected not to participate.  Under these circumstances, the Court concludes that *Watson* has little relevance to the case at bar.

Finally, in holding that Lowe's is not a federal officer the Court is mindful of the basic purpose of 28 U.S.C. § 1442, which is to protect the work of federal officers from interference by state interests.  In this instance there is no likelihood that allowing this action to proceed in state court will jeopardize the work of the CPSC.  "[T]his is not a case where plaintiffs seek to challenge federal policy or official action in a state court forum.  Rather, the plaintiffs challenge the conduct of a private corporation, acting without direction from a federal officer or agency.  Allowing this action to be litigated in state court will not interfere with the course of the [agency's] duties nor its policies regarding the regulation of the [ ] industry." *Tremblay*, 231 F. Supp. 2d at 419.  *See also Ryan*, 781 F. Supp. at 951 ("[R]emoval is not appropriate when [a] civil or criminal suit brought in state court has only a speculative impact on [federal] policy."); *Bakalis*, 781 F. Supp. at 145 ("Government employees are the primary protected class of § 1442(a)(1).").  Correspondingly, though federal officer jurisdiction is read "expansively" in suits involving federal officials, it is read narrowly where, as in this instance, only the liability of a private company purportedly acting at the direction of a federal officer is at issue.  *Freiberg*, 245 F. Supp. 2d at 1152 & n.6.  Simply put, section 1442 should not be read to "allow for federal jurisdiction over virtually any participant in a regulated industry," thus creating "an unprecedented expansion of federal jurisdiction." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. MDL05-1708(DWF/AJB), Civ.05-2957(DWF/AJB), Civ.05-2958(DWF/AJB), 2006 WL 1134766, at *3 (D. Minn.

Apr. 27, 2006).  *See also Brown v. Philip Morris Inc.*, 250 F.3d 789, 801 (3[d] Cir. 2001) ("The mere fact that a [private corporation] has complied with the requirements of a federal law cannot suffice to transform it into a federal actor any more than the compliance of a myriad of private enterprises with federal law and administrative regulations could of itself work such a transformation.").  The Court concludes that this action is due to be remanded to state court.

### 2.   Colorable Federal Defense

The Court finds that removal under 28 U.S.C.  § 1442 is improper for a further reason, namely, that Lowe's has failed to assert a colorable federal defense based on alleged preemption of Plaintiffs' state-law claims by federal law.  The Consumer Product Safety Act ("CPSA"), 15 U.S.C. §§ 2051-2085, contains a clause providing for express preemption of state law by federal law when regulations and safety standards promulgated by the CPSC pursuant to the statute are "in effect and appli[cable] to a risk of injury associated with a consumer product."  15 U.S.C. § 2075(a).  As discussed, the CPSC has promulgated no regulations and safety standards with respect to corded window blinds such as could give rise to preemption of state law by federal law.  *See Hittle v. Scripto-Tokai Corp.*, 166 F. Supp. 2d 142, 149 (M.D. Pa. 2001) (state-law tort claims against a manufacturer of cigarette lighters arising from a fire caused by a child playing with one of the manufacturer's lighters were not preempted by the CPSA, where a federal safety standard regarding child-proof cigarette lighters promulgated by the CPSC did not become effective until after the injury occurred); *Minersville Safe Deposit Bank & Trust Co. v. BIC Corp.*, Nos. Civ.A. 95-4548, Civ.A. 95-5538, 1999 WL 551897, at *2 (E.D. Pa. 1999) (same); *Johnston v. Deere & Co.*, 967 F. Supp. 574, 577-78 (D. Me. 1997) (in an action for personal injuries against the manufacturer of a riding lawn mower for failing to include a "no-mow-in-reverse" ("NMIR") device on the mower,

holding that the CPSA did not preempt the action where the CPSC proposed, but withdrew, a safety standard requiring NMIR devices on riding mowers).

Although the record in this case indicates that voluntary safety standards regarding corded window blinds have been generated by the window blinds industry in cooperation with the American National Standards Institute ("ANSI"), typically voluntary safety standards do not enjoy the force of law. *See Pfeiffer v. Eagle Mfg. Co.*, 771 F. Supp. 1133, 1136-37 (D. Kan. 1991). One court has suggested that voluntary safety standards might enjoy the force of law if, after public notice, the CPSC made written findings that compliance with such voluntary standards would eliminate or adequately reduce the risk of injury addressed and it is likely that there will be substantial compliance with such voluntary standards. *See National Kerosene Heater Ass'n, Inc. v. Massachusetts*, 653 F. Supp. 1079, 1086-89 (D. Mass. 1986) (citing 15 U.S.C. § 2056(b), § 2058(b)(2), and § 2075(a)). Assuming for the sake of argument that the CPSC has made the requisite public findings as to voluntary safety standards for corded window blinds, ANSI standards are minimum safety standards, *see Meisner v. Patton Elec. Co.*, 781 F. Supp. 1432, 1443 (D. Neb. 1990), and therefore cannot support a claim of federal preemption of state law. *See Geier v. American Honda Motor Co.*, 529 U.S. 861, 874-75 (2000). *See also Caraker v. Sandoz Pharms. Corp.*, 172 F. Supp. 2d 1018, 1033 (S.D. Ill. 2001) (holding that common-law claims are not preempted by drug labeling regulations promulgated by the Food and Drug Administration ("FDA") because "the FDA's drug labeling decisions impose only 'minimum' standards that are open to supplementation by state law through a jury's verdict enforcing a manufacturer's common law duty to warn."). The Court recognizes that a federal defense need only be colorable, not airtight, to sustain a claim of federal officer jurisdiction, *see Venezia*, 16 F.3d at 212, but, by the same token,

the Court does not equate a federal defense that is merely colorable with one that is hopeless.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs' Motion to Remand (Doc. 65) is **GRANTED**.  This action is **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, pursuant to 28 U.S.C. § 1447(c) for lack of federal subject matter jurisdiction.

**IT IS SO ORDERED.**

DATED:  6/8/06

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge